UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, )<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>RELIABLE EXPRESS TRANSPORT, INC., )<br>UNITED DELIEVERY SERVICE, and )<br>MARTY POSEKANY, individually and as )<br>Special Administrator of the Estate of )<br>Rosemary Posekany, deceased )<br>)<br>Defendants. ) | Case No. 1:22-cv-04752<br><br>Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Scottsdale Insurance Company ("Scottsdale") files suit against Defendants Reliable Express Transport ("RET"), United Delivery Service ("UDS"), and Marty Posekany ("Mr. Posekany"), seeking a judicial declaration that it does not have a duty to defend or indemnify RET or UDS in connection with a wrongful death lawsuit pending in the Circuit Court of Cook County, Illinois, *Posekany v. United Delivery Service et al.* (Cir. Ct. Cook Cnty., IL, No. 19 L 3842) ("Underlying Lawsuit"). Scottsdale argues that RET materially breached a condition precedent to coverage under the policy [37]. RET now moves this Court for an order dismissing Scottsdale's complaint under Federal Rule of Civil Procedure 12(b)(6) [17]. For the reasons below, RET's motion is denied.

**Background**

*A. The Underlying Lawsuit*

The Underlying Lawsuit stems from two transportation agreements between: (1) UDS and RET and; (2) Edwardo Rodriguez and RET. On or around March 15, 2018, Rosemary Posekany was operating her vehicle at or near the intersection of Route 24 and County Road 1700E in Ford County, Illinois. Rodriguez, who had contracted with RET to deliver packages on behalf of UDS,

1

was driving through the same intersection, failed to stop for a stop sign and collided with Ms. Posekany's vehicle, causing Ms. Posekany's death. On April 10, 2019, Mr. Posekany initiated the Underlying Lawsuit, alleging wrongful death claims in state court. against UDS and Rodriguez. Mr. Posekany added RET as a defendant on October 10, 2019.

B. *Relevant Insurance Policies*

Scottsdale issued to RET a Commercial Excess Liability Policy, effective January 31, 2018 to January 31, 2019 ("Scottsdale Excess Policy"). The Scottsdale Excess Policy is excess over a commercial auto liability insurance policy issued to RET by Transport Mutual Insurance Association Limited ("TT Club"), effective January 31, 2018, to January 30, 2019 ("TT Club Primary Policy"). The TT Club Primary Policy is subject to a $1 million limit for Third Party Liabilities, including Special Limit Hired & Non-Owned Auto. Per Section T5 Costs of the TT Club Primary Policy, "costs" are included in the $1 million limit of liability.

Section I(1)(a) of the Scottsdale Excess Policy contains the following Insuring Agreement:

> We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Coverage Part applies. We will have the right and duty to defend the insured against any suit seeking damages for such "injury or damage" when the applicable limits of "controlling underlying insurance" have been exhausted in accordance with the provisions of such "controlling underlying insurance."

Further, Section III(3) of the Scottsdale Excess Policy contains the following conditions relating to the insured's duties in case of a lawsuit that may implicate coverage under the policy:

> (b) If a claim is made or suit is brought against any insured, you must: (1) Immediately record the specifics of the claim or suit and the date received; and (2) Notify us as soon as practicable. You must see to it that we receive written notice of the claim or suit as soon as practicable.
>
> (c) You and any other insured involved must: (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit; (2) Authorize us to obtain records and other information; (3) Cooperate with us in the investigation or settlement of the claim or defense against the suit; and (4) Assist us, upon our request, in the enforcement of any right against any person or

organization which may be liable to the insured because of "injury or damage" to which this insurance may also apply.

C. *Alleged Policy Violations*

Scottsdale has disclaimed all coverage under the policy alleging that RET materially breached a condition precedent to coverage under the Scottsdale Excess Policy. Specifically, Scottsdale alleges that RET promptly notified TT Club of the Underlying Lawsuit, but failed to promptly inform Scottsdale of the Underlying Lawsuit despite the reasonable likelihood that the wrongful death claims would require more than $1 million to resolve the liability of RET. Rather than provide notice of the Underlying Lawsuit to Scottsdale "as soon as practicable," Scottsdale alleges that RET unjustifiably delayed two and a half years in notifying Scottsdale of the Underlying Lawsuit. Instead of proactively trying to settle the Underlying Lawsuit, RET actively litigated the case for years, filing an unsuccessful dispositive motion, conducting extensive discovery, and then filing a second lengthy dispositive motion. Scottsdale alleges that RET unnecessarily incurred approximately $200,000 in defense fees and expenses, leaving only $800,000 available to settle the Underlying Lawsuit.

**Legal Standard**

Where a party seeks to dismiss under Rule 12(b)(6) an insurer's complaint seeking a declaration that it has no duty to defend, the Court reads the complaint in favor of the non-moving party—the insurer—and then decides if on its face, it plausibly states a claim for relief. *See, e.g., Westfield Ins. Co. v. Nat'l Decorating Serv., Inc.*, 67 F.Supp.3d 898, 900 (N.D. Ill. 2014). The Court assesses the sufficiency of the complaint's allegations and not whether the non-moving party will succeed in her cause of action. *See Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Threadbare recitals of the elements of a cause of action and allegations that are merely legal

conclusions are not sufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**Discussion**

RET argues that Scottsdale's complaint should be dismissed because the Underlying Complaint does not allege sufficient facts to show that RET failed to provide notice of the Underlying Lawsuit "as soon as practicable" to Scottsdale. Where an insurance policy requires an insured to notify the insurer "as soon as practicable," courts interpret that phrase to mean "within a reasonable time." *Country Mut. Ins. Co. v. Livosri Marine, Inc.*, 222 Ill.2d 303, 311, 305 Ill.Dec. 533, , 856 N.E.2d 338 (2006). "The term 'immediate,' in the context of insurance policy notice provisions, has been interpreted in a similar manner[.]" *W. Am. Ins. Co. v. Yorkville Nat. Bank*, 238 Ill.2d 177, 186, 345 Ill.Dec. 445, 939 N.E.2d 288 (2010). "Whether notice has been given within a reasonable time depends on the facts and circumstances of each case." *Id.* at 185, 345 Ill.Dec. 445, 939 N.E.2d 288, 294. But where the material facts are undisputed, "the reasonableness of notice to an insurer by its insured is a question of law." *Kerr v. Illinois Cent. R. Co.*, 283 Ill.App. 3d 574, 583, 670 N.E.2d 759 (1996).

The Illinois Supreme Court has looked to several factors to assess whether an insured's notice is reasonable, including: (1) the specific language of the policy's notice provision; (2) the insured's sophistication in insurance matters; (3) the insured's awareness of an event which may trigger insurance coverage; (4) the insured's diligence in ascertaining whether policy coverage is available; and (5) prejudice to the insurer. *Country Mut.*, 222 Ill.2d at 313, 305 Ill.Dec. 533, 856 N.E.2d 338. Illinois courts have made clear that these factors "may be considered and, though relevant, are not individually determinative." *Hartford Cas. Ins. Co. v. ContextMedia, Inc.*, 65 F.Supp.3d 570, 579 (N.D. Ill. 2014) (citation and quotation omitted).

4

Here, the Court does not consider whether to grant Scottsdale's declaratory judgment or determine if Scottsdale has a duty to defend RET in the underlying action because those are questions of merit. At this stage, the Court's task is to measure the sufficiency of the Complaint. *See The Cincinnati Ins. Co. v. Berkshire Refrigerated Warehousing, LLC*, 149 F. Supp. 3d 867, 871–72 (N.D. Ill. 2015).

The complaint's factual allegations plausibly allege that RET failed to provide notice of the Underlying Policy. Scottsdale has made the following allegations: (1) the Scottsdale Excess Policy contains the condition that RET "must see to it that [Scottsdale] are notified as soon as practicable of an 'event', regardless of the amount, which may result in a claim under this insurance." (Dkt. #37, Exhibit A); (2) RET was added at a defendant in the Underlying Lawsuit in October 2019; (3) by late 2019, RET knew or should have known that the Underlying Lawsuit was reasonably likely to involve the Scottsdale Excess Policy, but RET delayed for two and half years in notifying Scottsdale; (4) RET unnecessarily incurred approximately $200,000 in defense fees and expenses, leaving only $800,000 available to settle the Underlying Lawsuit; and (5) TT Club agreed to contribute the remaining $800,000 limit of the TT Club Policy in order to settle the Underlying Lawsuit against RET. The Court find that this is sufficient to state a claim.

Alternatively, RET argues that Scottsdale's complaint should be dismissed because Scottsdale's duty to indemnify will not be ripe until liability in the Underlying Lawsuit is determined. The duty to defend is broader than the duty to indemnify, and where there is no duty to defend, a duty to indemnify cannot arise. *See United Nat'l Ins. Co. v. Dunbar & Sullivan Dredging Co.*, 953 F.2d 334, 338 (7th Cir. 1992). In general, a determination of an insurer's duty to indemnify must follow a determination of the insured's underlying liability. *See U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 74, 578 N.E.2d 926 (1991). But where an insurer seeks a declaration that it has no duty to defend and no duty to indemnify, the claim regarding its duty to indemnify is not premature

because its issues overlap with whether it has a duty to defend. *See, e.g., Atlantic Casualty Ins. Co. v. Sealtite Roofing & Constr. Co.*, 73 F.Supp.3d 953, 961 (N.D. Ill. 2014). Here, a determination regarding Scottsdale's duty to defend has not yet been made. If the Court finds that Scottsdale has no duty to defend, it can accordingly find that it has no duty to indemnify. Accordingly, the Court denies RET's motion to dismiss Scottsdale's declaratory judgment claims regarding the duty to indemnify.

**Conclusion**

For these reasons, this Court denies the motion to dismiss.

**IT IS SO ORDERED.**

Date: 9/20/2023

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge